570 F.2d 913
 78-1 USTC P 9320
 RENTEX CORPORATION, Homefinders of America, Inc., and Larry
S. Glist, Appellants,
v.
David P. MESSINGER, Special Agent of the Internal Revenue
Service, Wade H. Kilpatrick, Special Agent of the Internal
Revenue Service, District Director of Internal Revenue
Service for the District of Colorado, United States, and GMB
Company, Robert Simon, Bookkeeper, Appellees.
 No. 76-1749.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 15, 1977.
Decided Feb. 21, 1978.
 
 Stanley J. Drexler of Drexler & Wald, P. C., Denver, Colo. (Leslie H. Wald and Michael J. Abramovitz, Denver, Colo., with him on the brief), for appellants.
 James E. Crowe, Jr., Atty., Tax Division, Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Jonathan S. Cohen, Attys., Tax Division, Dept. of Justice, Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., of counsel, with him on the brief), for Federal appellees.
 Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiffs sought money damages, the return of personal property seized by the Internal Revenue Service, and to enjoin the use of the documents seized in any future criminal proceeding. The individual and the corporate plaintiffs assert a violation of Fourth Amendment rights.
 
 
 2
 The IRS was conducting an income tax investigation of plaintiff Rentex Corporation and also of plaintiff Larry Glist who was the "principal officer" of Rentex. The plaintiffs were in the business of selling lists of available residential rental property to persons looking for apartments or houses. The place of business of Mr. Glist was in Denver. The plaintiffs also sold franchises to persons wishing to engage in the same business. The office in Denver had four rooms including the private office of Mr. Glist. The business was a perfectly legitimate one, and no fraud or unfair dealing is asserted.
 
 
 3
 However, the IRS stated that it had information, apparently from former employees, that Mr. Glist kept a separate ledger at the Denver office as to payments received from franchisees. This was referred to as a "skim book," and was apparently used to record transactions not reported or not fully reported to the IRS. In any event, the IRS decided to put one of its agents in an undercover capacity into the Denver office as an employee. Thus Agent Messinger obtained employment at the Rentex office as a "rental counselor." He reported regularly to his superior in the IRS as to what he observed, heard, and read in the office. It is not necessary to describe this in detail as he had free access to the entire office. He read material on or in the desk and apparently elsewhere in the office. He asked questions of the other employees and of Mr. Glist as to how the business was conducted and how the franchises were handled. Mr. Messinger acted as an employee at Denver from October 18th until November 20th. He was then assigned to Boulder but "quit" on November 20th, and went to Denver to get his pay check. The next day he and Agent Kilpatrick filed affidavits with a magistrate and procured a search warrant for the Rentex office which was executed the same day. The agents thereby seized books and records.
 
 
 4
 As to the claim for damages, the record does not contain any evidence upon which a judgment for damages could be based. We thus agree with the conclusion reached on this point by the trial court. The personal property was returned to the plaintiffs, and the claim for return is moot.
 
 
 5
 The claim for injunctive relief to prevent the use of the material seized, or information derived from it at any criminal proceedings in the future must also fail. Such a matter cannot properly be litigated in a civil action under the circumstances here present. It was a premature claim and the matter had not yet reached the status of a justiciable controversy. There were, as we read the record, only possibilities. The claim could not be considered in the context of a particular indictment or information, and the impact of the search was thus speculative. The nature and scope of the criminal proceedings were not formed. If the criminal proceeding had proceeded to a point where the issue could be considered with reference to the particular charge, then the proper remedy would be a motion to suppress. This civil suit cannot be used in place of a motion to suppress nor to anticipate such a motion in advance of charges.
 
 
 6
 This opinion should not be taken in any way as an approval or disapproval of the use of undercover agents in legitimate businesses. Quite different considerations are there present which are not present in the drug cases, and we have not evaluated them.
 
 
 7
 AFFIRMED.
 
 
 8
 HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 9
 I agree with the majority opinion that injunctive relief to enjoin use of documents seized was properly denied. However, in the disposition of the claim for damages, the majority affirms the denial of relief on the basis that the record contains no evidence on which any judgment for damages can be based. Because of the possibility of recovery of nominal damages, I cannot agree that the damages claim can be wholly disposed of as the majority does on the basis of lack of proof of damages.[1]
 
 
 10
 If a violation of Fourth Amendment rights occurred, the plaintiffs would at least be entitled to nominal damages regardless of whether other damages are recoverable, see Magnett v. Pelletier, 488 F.2d 33, 34-35 (1st Cir.); Halperin v. Kissinger, 434 F.Supp. 1193, 1195-96 (D.D.C.) (appeals pending); Tatum v. Morton, 386 F.Supp. 1308, 1313 (D.D.C.), to redress an invasion of constitutionally protected privacy. See Weeks v. United States, 232 U.S. 383, 391, 34 S.Ct. 341, 58 L.Ed. 652. Nominal damages need not be alleged in such a case, and they are proved by proof of deprivation of a right to which the plaintiff was entitled. See Basista v. Weir, 340 F.2d 74, 87 (3d Cir.). The plaintiffs press the argument that they are entitled to at least nominal damages. (Brief for the Appellants, 31). Accepting the trial court's findings that proof of compensatory damages was lacking, I nevertheless cannot agree that the damages claim can be completely disposed of on that basis in view of the nominal damages question and the vindication of rights and recovery of costs which may flow from such an award.
 
 
 
 [1]
 The trial court's opinion and the majority opinion do not decide the question whether a constitutional violation occurred, and I therefore do not feel it necessary or proper for me to discuss that question
 The trial court's opinion did hold that recovery of damages is barred by a qualified immunity defense and this ruling would dispose of the nominal damages question along with other damage claims. The immunity issue is troublesome and involves discussion of the record which I will not undertake since the majority opinion covers only the insufficiency of the evidence to support a damages award.